# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1441 | **DATE** | 3/30/2004 |
| **CASE TITLE** | Continental Casualty vs. Hartford Steam Boiler | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____, Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, the Court grants plaintiff's motion for summary judgment. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| No notices required, advised in open court. | | | Document Number |
| No notices required. | | number of notices | |
| Notices mailed by judge's staff. | | MAR 3 0 2004 | |
| Notified counsel by telephone. | | date docketed | 41 |
| ✓ Docketing to mail notices. | | IS | |
| Mail AO 450 form. | | docketing deputy initials | |
| Copy to judge/magistrate judge. | | | |
| MW courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 03 C 1441 |
| HARTFORD STEAM BOILER INSPECTION AND INSURANCE CO., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the Court on Plaintiff Continental Casualty Company's ("Continental"), motion for summary judgment. For the reasons stated below we grant Continental's motion for summary judgment.

## BACKGROUND

Plaintiff Continental, an insurer, entered into three reinsurance contracts with Defendant, Hartford Steam Boiler Inspection and Insurance Co. ("Hartford"), a reinsurer. Each of these contracts contains an arbitration clause requiring the parties to arbitrate in the event of dispute under the reinsurance contracts. The arbitration

1

41

clauses require a party seeking arbitration to provide written notice to the other side if a dispute arises. The relevant portions of the arbitration agreements state: "If either party refuses or neglects to appoint an arbitrator within 30 days (or 60 days in one of the two contracts) after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators."

A dispute arose between Continental and Hartford and Continental sent written notice to Hartford to demand arbitration on December 18, 2002 by FedEx overnight delivery. On December 20, the letter was delivered to Hartford's mailroom and W. Ragland signed for the delivered arbitration demand at 12:25pm. Under two of the three contracts, the arbitration clause dictates that Hartford must name its party- appointed arbitrator within 30 days of receipt of a demand for arbitration. The third contract gives Hartford 60 days to appoint its arbitrator. Thus, the deadlines for the first two contracts required Hartford to appoint its own arbitrator by January 19, 2003. Receiving no response from Hartford by the January 19 deadline, Continental appointed Richard White ("White") as the second arbitrator for two of the first two contracts pursuant to the terms of the arbitration clause on January 27, 2003. The deadline for the third contract was February 19, 2003. Continental did not receive a response as to Hartfords arbitrator by this date and again appointed Richard White as the second arbitrator for the third contract on February 20, 2003. On February 21, 2003, Hartford attempted to designate Leonard Silver as its party-appointed arbitrator under the contracts. Hartford contends that

the intended recipients at Hartford never received the communications from Continental because of a mistake in the Hartford mailroom. Hartford also contends that White should not be allowed to be an arbitrator because of his former relationship with a Continental employee.

Continental now seeks summary judgment, an order confirming White as the second arbitrator, and order striking the attempted appointment of Leonard Silver as the arbitrator for Hartford, and an order requiring the arbitrators Mr. Cass and Mr. White to proceed with the arbitration pursuant to the arbitration agreement in the reinsurance contracts.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest

3

on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

In order to determine if summary judgment is appropriate, we must first determine whether there is any genuine issue of material fact in either of the two main issues. These issues are whether Continentals appointment of Richard White as arbitrator for Hartford is valid, and whether Continental should be precluded from appointing Richard White due to lack of good faith in the appointment.

## I. Continental's Appointment of Richard White Is Valid

### A. Receipt of Notice

Hartford claims there is a dispute as to whether Continentals demand for arbitration was actually received by Hartford. According to Hartford, there is no evidence that Mr. William MacKay Heckles ("Heckles"), the Senior Vice President of Hartford, and the person to whom the letter was addressed, ever received the letter. They also claim there is no record the mailroom received the letter. However, in an affidavit by Heckles, he asserts the letter addressed to him was delivered to Hartford's mailroom from Continental, and was accepted by Hartfords mailroom at 12:30pm. Furthermore, Continental has documentation from FedEx that the letter was delivered to Hartford's mailroom, scanned, and signed for by a W. Ragland on December 12, 2002 at 12:25pm. Also, pursuant to Local Rule 56.1 Hartford admits that the arbitration demands reach its mailroom. Hartford's only response is that "there is no evidence of the demand letter ever having been taken from the mailroom to anyone who signed off as the recipient." ( R SF 10, 13, 14).

Heckles claims that he allegedly never received the letter due to an error in the mailroom, but this should not allow Hartford to escape liability. *Thomson Printing Machinery Co., v. B.F. Goodrich Co.,* 714 F.2d 744, 748 (7th Cir. 1983). In *Thomson*, Goodrich's mailroom received a letter and failed to act as it normally would within their reasonable routine, thus, the letter did not reach the appropriate recipient. *Id.* The U.C.C. mandates that notice "is effective for a particular

transaction . . . from the time when it would have been brought to [the attention of the individual conducing that transaction] if the organization had executed due diligence." *Id.*(quoting U.C.C. §1-201(27)). The U.C.C. also defines the general standard for what a mailroom should do and how it can provide due diligence:"an organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines." *Id.* (quoting U.C.C. §1-201(27)). In *Thomson Printing Machinery Co.* the court found that Goodrich's mailroom mishandled the letter, but Goodrich could not escape liability, and claim non-receipt, because of this deviation from their reasonable routine. 714 F.2d at 748. Similarly, in the case at bar, the letter was received by Hartford's mailroom, but was allegedly never delivered to the appropriate person. Hartford admits pursuant to Local Rule 56.1 that its mailroom received the letter regarding the first two contracts on December 20, 2002. ( R SF 10). Hartford also admits that Continental made an arbitrator demand regarding the third contract on February 20, 2003 and that Hartford's mail room received the demand. ( R SF 14). Hartford's mailroom did not execute due diligence as they did not comply with their normal routine. The appropriate procedure for Hartford's mailroom was to deliver Federal Express letters to the proper floor in the Hartford building and then distribute the letters to the appropriate recipients on that floor. Aff. William MacKay Heckles ¶ 3 (May 6, 2003). Due to an error in the mailroom, these normal procedures were apparently

6

not carried out, but as in *Thomson Printing Machinery Co.*, Hartford, cannot escape liability by claiming non-receipt of the letter. We also note that the fact that more than one letter did not get to its final destination at Hartford is further indication that Hartford's mailroom did not follow reasonable procedures.

### B. Strict Enforcement of Arbitration Agreement

Hartford incorrectly claims the law is unsettled as to whether Continental had the right to appoint an arbitrator on their behalf. In actuality, the law in the Seventh Circuit is clear. The court will adhere to the terms that the parties agreed upon in their arbitration agreement as well as the guidelines in the Federal Arbitration Act. *Universal Reinsurance Corp. v. Allstate Ins. Co.* 16 F.3d 125, 128 (7th Cir. 1994). In *Universal*, the terms of the arbitration agreement at issue stated: "If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint both arbitrators." *Id.* at 126-27. Universal received a letter from Allstate demanding arbitration and they had 30 days to name their arbitrator. *Id.* However, due to a secretarial error, the deadline date was transcribed incorrectly, and Universal failed to meet the 30 day deadline. *Id.* at 127. Allstate appointed two arbitrators, and Universal objected. *Id.* The court found the arbitration agreement was unambiguous and should be enforced according to its express terms. *Id.* at 129. The secretarial error constituted neglect within the terms of the arbitration

agreement, and this was precisely the type of contingency the parties anticipated, and provided for in the agreed upon contract. *Id.* Universal's claim that the error was not the type of mistake that constituted neglect, was unfounded *Id.* at 128. The court found that because the arbitration agreement does not differentiate among degrees of neglect, both culpable and non-culpable conduct are included. *Id.* In the case at hand, the arbitration agreement between Continental and Hartford is virtually identical to the one in *Universal.* Hartford's mailroom error constitutes neglect. This contingency is directly addressed in the arbitration agreement. Both parties have agreed on what the outcome should be when one party neglects to appoint an arbitrator. Therefore, because Hartford neglected to appoint an arbitrator, Continental has the right to appoint both arbitrators.

In addition to this conclusion, The Federal Arbitration Act says: "if in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed. . . ." 9 U.S.C.A. § 5. In the case at hand, the arbitration agreement clearly provides the method for appointing arbitrators, and should be followed.

## II. Hartford's Breach of Good Faith Claim

Hartford claims that even if Continental is allowed to appoint an arbitrator on their behalf, they breached their duty of good faith when they appointed Richard White. Glenn Rzeszutko was the Continental employee responsible for selecting the

arbitrators and he chose Richard White as the arbitrator for Hartford. Seven years before this dispute occurred, Rzeszutko worked for International Insurance Company, the same company that employed Richard White. They worked for the same company for about six to nine months and had about 80 other employees in their division. Rzeszutko did not report to White, and the extent of their relationship consisted of occasional friendly conversations in the office. Hartford claims this relationship is enough to constitute a bias, and a breach of good faith by Continental. However, this argument is not properly before this court at this time. A suit challenging arbitration, on whatever grounds, including a breach of good faith or bias, before arbitration is completed is premature. *Smith v. American Arb. Assn., Inc.*, 233 F.3d 502, 506 (7th Cir. 2000). In *Smith*, the court held: "to allow a party to bring an independent suit to enjoin the arbitration is inconsistent with fundamental procedural principles that apply with even greater force to arbitration than to conventional litigation." *Id.*

Even if this was a timely claim, the selection of Richard White was not done in bad faith. Arbitration is different than adjudication where the "appearance of partiality" is enough to disqualify a federal judge. *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 307 F.3d 617, 621 (7th Cir. 2002). For arbitration, there must be "evident partiality" not mere "appearances or risks" of impartiality in order to negate an award. *Id.* In *Sphere*, a reinsurer's appointed arbitrator had spent two months working as counsel for the reinsurer on an unrelated manner four years earlier. *Id.*

The court held this was not evident partiality sufficient to disqualify the arbitrator. *Id.* Furthermore, the court noted that hypothetically speaking, the appointed arbitrator could have even served as a federal judge in this case without a partiality challenge. *Id.* In the situation at hand, Rzeszutko and Richard White worked for the same company *seven* years earlier, and did not ever work together. Thus, if the arbitrator in *Sphere,* who was employed by one of the parties only four years earlier, was not partial, surely Richard White is not a partial arbitrator in the current situation.

## CONCLUSION

Therefore, based on the foregoing analysis we grant Continental's motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 30, 2004